# UNITED STATES DISTRICT COURT

_____SOUTHERN_____ District of __NEW YORK__

PAMELA A. MCGOWAN,

Plaintiff(s),

- against -

MERCK-MEDCO MANAGED CARE, LLC LONG
TERM DISABILITY PLAN, MEDCO CONTAINMENT
SERVICES, INC., as PLAN ADMINISTRATOR,
MEDCHOICE HEALTH CARE PLAN, HORIZON
HEALTHCARE SERVICES, INC.. as CLAIMS
ADMINISTRATOR FOR THE MEDCHOICE HEALTH
CARE PLAN and THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

Defendants.

## AMENDED SUMMONS
## IN A CIVIL CASE

CASE NUMBER: 06 Civ. 6162 (JSR)

TO: (name and address of defendants)

SEE ATTACHED SHEET

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY,
(name and address)

DeHAAN, BUSSE, BINDER & BINDER, LLP.
300 Rabro Drive
Suite 101
Hauppauge, New York 11788

an answer to the complaint which is herewith served upon you, within __20__ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default
will be taken against you for the relief demanded in the complaint. You must also file your answer
with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

(BY) DEPUTY CLERK

DEC 0 7 2006

DATE



MERCK-MEDCO MANAGED CARE, LLC LONG TERM DISABILITY PLAN
C/O JOHN G. STRETTON, ESQ.
EDWARDS ANGELL PALMER & DODGE LLP
301 TRESSER BOULEVARD
3 STAMFORD PLAZA
STAMFORD, CT 06901

MEDCO CONTAINMENT SERVICES, INC., as PLAN ADMINISTRATOR
C/O JOHN G. STRETTON, ESQ.
EDWARDS ANGELL PALMER & DODGE LLP
301 TRESSER BOULEVARD
3 STAMFORD PLAZA
STAMFORD, CT 06901

MEDCHOICE HEALTH CARE PLAN
C/O JOHN G. STRETTON, ESQ.
EDWARDS ANGELL PALMER & DODGE LLP
301 TRESSER BOULEVARD
3 STAMFORD PLAZA
STAMFORD, CT 06901

HORIZON HEALTHCARE SERVICES, INC. as CLAIMS ADMINISTRATOR FOR THE MEDCHOICE
HEALTH CARE PLAN
C/O HORIZON HEALTHCARE SERVICES, INC. D/B/A HORIZON BLUE CROSS BLUE SHIELD OF
NEW JERSEY
3 PENN PLAZA EAST
SUITE 16F
NEWARK, NEW JERSEY 07105                    COUNTY OF ESSEX

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA
C/O MICHELLE M. ARBITRIO, ESQ.
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
3 GANNETT DRIVE
WHITE PLAINS NEW YORK 10604

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————X
PAMELA A. MCGOWAN,

                    Plaintiff,

     – against –

MERCK-MEDCO MANAGED CARE, LLC LONG
TERM DISABILITY PLAN, MEDCO CONTAINMENT
SERVICES, INC., as PLAN ADMINISTRATOR,
MEDCHOICE HEALTH CARE PLAN, HORIZON
HEALTHCARE SERVICES, INC. as CLAIMS
ADMINISTRATOR FOR THE MEDCHOICE HEALTH
CARE PLAN and THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

                 Defendants.
———————————————————————X

Civil
Action No.:
06 Civ. 6162 (JSR)

AMENDED COMPLAINT



Plaintiff, Pamela A. McGowan, by her attorneys, DEHAAN, BUSSE, BINDER & BINDER LLP, for her Complaint against the Defendants, Merck-Medco Managed Care, LLC Long Term Disability Plan (the "LTD Plan"), Medco Containment Services, Inc., as Plan Administrator (the "Plan Administrator"), Medchoice Health Care Plan (the "Health Care Plan"), Horizon Healthcare Services, Inc., as Claims Administrator for the Medchoice Health Care Plan (the "Claims Administrator") and The Prudential Insurance Company of America ("Prudential"), hereby alleges as follows:

## JURISDICTION AND VENUE

1.    Jurisdiction of the Court is based upon 29 U.S.C. §§ 1132(e)(1) and 1132(f), which give the District Courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan. In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

2.    Under the Employee Retirement Income Security Act of 1974(29 U.S.C. §§ 1001, *et seq.*) ("ERISA"), the long-term disability plan at issue in this litigation must contain provisions for administrative or internal appeal of a denial of benefits.  Plaintiff has exhausted all administrative avenues of appeal and has received a final denial.  Therefore, this matter is properly before this court for *de novo* judicial review under Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).

3.    Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2), which allows an action under Title I of ERISA, as amended, to be brought in the district where the plan is administered, where the breach took place or where a defendant resides or may be found.

4.    Plaintiff resides in Monroe, New York, which is in Orange County.  As such, venue is proper in the Southern District of New York because that is where the breach took place.

## NATURE OF ACTION

5.    This is a claim seeking a declaration that Plaintiff is entitled to disability income benefits pursuant to the terms and conditions of an employee benefit welfare plan.

6.    The LTD Plan provides long term disability benefits to employees of Merck-Medco Managed Care, L.L.C. ("Medco").  As such, the LTD Plan is an employee benefit welfare plans established and maintained by an employer or employee organization for the benefit of its employees, and ERISA applies to this action.  Said benefits were effective at all times relevant hereto.

7.    Claims for benefits are administered and paid through a Group Policy (No. GW-22283), issued by Defendant, Prudential.  Defendant, Prudential, has made all of the claims decisions in this matter.

8.    This is also a claim seeking a declaration that Plaintiff is entitled to benefits, in the form of continuation of coverage under the terms and conditions of the other employee welfare benefit plans, including the Health Care Plan, as a result of her disability.

## STANDARD OF REVIEW

9.      Neither the LTD Policy nor the Summary Plan Description ("SPD") in force at the time Plaintiff became disabled contained a grant of discretion to Prudential or the Plan Administrator.

10.     As such, this Court must conduct a *de novo* review of the denial of Plaintiff's claim under Firestone Tire & Rubber Co. v. Bruch.

## THE PARTIES

11.     Plaintiff was born in December 1963, is presently 42 years old, and is a resident of Monroe, New York.

12.     Defendant, the LTD Plan, is an employee benefit welfare plan, as defined by ERISA, with a home office located at 100 Parsons Pond Drive, Franklin Lakes, New Jersey 07417.

13.     Defendant, Medco Containment Services, Inc., is the named Plan Administrator for the LTD Plan and the Health Care Plan, and the designated agent for service of process.  The Plan Administrator's address is 100 Parsons Pond Drive, Franklin Lakes, New Jersey 07417.

14.     Defendant, The Health Care Plan, is an employee welfare benefit plan, as defined by ERISA.  Medco Containment Services, Inc. Is the named Plan Administrator of the Health Care Plan, with a home office located at 100 Parsons Pond Drive, Franklin Lakes, New Jersey 07417.

15.     Defendant, Horizon Healthcare Services Inc., d/b/a Horizon Blue Cross Blue Shield of New Jersey is the named Claims Administrator for the Health Care Plan.  The Claims Administrator's address is 3 Penn Plaza East, Suite 16F, Newark, New Jersey 07105.

16.     Defendant, Prudential, is an incorporated insurance company licensed to conduct the business of insurance in New York.  Upon information and belief, Prudential is the insurer

and named Claims Administrator for the LTD Plan. Prudential's address is 213 Washington Street, 9th Floor, Newark, New Jersey 07102-2992.

## STATEMENT OF FACTS

Plaintiff's Occupation:

17.    Plaintiff became an employee of Medco in September 1990. Plaintiff continued to work for Medco through July 14, 2000, on which date she became disabled. As such, she was a covered participant in the LTD Plan.

18.    Prior to and including July 14, 2000, Plaintiff was employed by Medco as a Travel Administrator. In this capacity, Plaintiff was responsible for, among other things, traveling to various parts of this country for her employer, training various personnel on new computer systems regarding travel and entertainment expenses and assisting in the implementation of these systems nationwide.

19.    This position would involve carrying presentation materials across the country in order to set up new training facilities. In order to accomplish this task, Plaintiff would have to travel almost weekly, most times without the benefit of a lay over. Plaintiff would be required to travel to a new location, set up the facility, and travel back home that same day. On occasion, her position required her to stay for an extended period of time in a distant city.

20.    Under the DICTIONARY OF OCCUPATIONAL TITLES, Plaintiff's occupation most closely resembles that of an Administrative Clerk (219.362-010), which is classified as a light occupation. However, the job description for an Administrative Clerk does not take into account all of the traveling that Plaintiff's position required.

21.    Plaintiff's pre-disability income was about $35,000 per year.

22.    For the period beginning prior to July 14, 2000, and at all relevant times hereto, Plaintiff, together with other regular employees of Medco, was covered as a participant under the LTD Plan.

Page 4 of 20

The Terms of the LTD Plan:

23.    Immediately prior to the onset of her disability, Plaintiff was an active employee and as such, was a covered participant under the LTD Plan.

24.    The LTD Plan provides for payment of monthly benefits to eligible employees, and is designed to protect employees against a loss of earned income during periods of extended disability.

25.    Benefits under the LTD Plan are administered and paid by Prudential pursuant to a group disability insurance policy (the "Group Policy"). Because Prudential pays benefits out of its own coffers, when it administered Plaintiff's claim, it was operating under a substantial conflict of interest, which had a significant impact upon its decision-making on this claim.

26.    The monthly benefit is determined based on a set percentage (60%) of the employee's pre-disability earnings, with a maximum monthly benefit of $2,000. The monthly benefit is reduced by "Deductible Sources of Income," which includes benefits received pursuant to the Social Security Act.

27.    In Plaintiff's case, the LTD Plan provides for a benefit of approximately $1,750 per month less the amount of "other benefits," as defined by the Group Policy.

28.    Long Term Disability benefits commence after an "Elimination Period" of 180 days.

29.    In the instant matter, Plaintiff's Long Term Disability benefits should have commenced around January 14, 2001.

30.    The maximum benefit period under the LTD Plan's Group Policy extends to the claimant's 65th birthday, provided the period of total disability begins prior to age 60, which is the case herein.

31.    The Group Policy defines "Disability" as follows:

*You are disabled when Prudential determines that:*

-    *you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury*

-    *you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury*

*After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.*

*The loss of a professional or occupational license or certification does not, in itself, constitute disability.*

32.    The Group Policy gives Prudential the right to have Plaintiff examined, stating:

*We may require you to be examined by doctors, other medical practitioners or vocational experts of our choice. Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim.*

33.    The Group Policy also requires a claimant to provide the following proof of his/her claim:

*Your proof of claim, provided at your expense, must show:*

*(1)    That you are under the regular care of a doctor.*
*(2)    The appropriate documentation of your monthly earnings.*
*(3)    The date your disability began.*
*(4)    Appropriate documentation of the disabling disorder.*
*(5)    The extent of your disability, including restrictions and limitations preventing you from performing your regular occupation or gainful occupation.*
*(6)    The name and address of any hospital or institution where you received treatment, including all attending doctors.*
*(7)    The name and address of any doctors seen . . .*

34.    The Group Policy requires Plaintiff to apply for any "Deductible Sources of Income," which includes benefits received pursuant to the Social Security Act.

35.    Moreover, if Plaintiff does not apply for any "Deductible Income Benefits" (*e.g.*, Social Security Disability benefits), Prudential can penalize Plaintiff by estimating Plaintiff's entitlement to these benefits and reducing the LTD benefit by that amount.

36.    Prudential will not reduce Plaintiff's payments by the estimated amount if Plaintiff applies for benefits; appeals any denial to the Administrative Law Judge level; and signs Prudential's Reimbursement Agreement form.

37.     On January 31, 2001, Plaintiff was forced to signed the Reimbursement Agreement to avoid reduction of her LTD benefits for an estimated Social Security benefit.

Plaintiff's Disability:

38.     Plaintiff was forced to stop working on July 14, 2000, due to degenerative disc disease of the lumbar spine; shooting low back pain which radiates into the lower extremities; mid-back pain which radiates across her shoulders; neck pain which radiates into the head and down the arms and hands; paresthesias in the hands and feet; lumbar stenosis; cervical spondylosis; cervical myofascial pain syndrome; and herniated discs of the lumbar and cervical spine.

39.     Plaintiff was diagnosed with the above medical conditions by her various treating physicians, which include an orthopedist, a neurologist, a spine and scoliosis specialist, and a chiropractor.

40.     Exams of the lumbosacral spine dated June 26, 2000, revealed narrowing of the L5-S1 intervertebral disc space.

41.     An MRI of the lumbar spine revealed degenerative disc disease with small central and slightly to the right midline herniation at T12-L1 and degenerative disc with moderate sized broad based central herniation at L4-L5.

42.     An MRI of the temporomandibular joints revealed anterior disc displacement of the right temporomandibular joint with an abnormal morphology of the disc, anterior disc displacement of the left temporomandibular joint with reduction, flattening of the mandibular condyles bilaterally and decreased range of motion bilaterally.

43.     An x-ray of the lumbar spine revealed lumbarization of S1.

44.     An MRI of the cervical spine revealed very small midline central herniation of the disc at C6-C7 and slightly narrowed disc space and very mild diffuse bulging disc at C5-C6.

45.     An EMG was positive for right ulnar neuritis at the elbow.

Page 7 of 20

46.    A subsequent MRI of the lumbar spine revealed a central and right of midline disc herniation at T12-L1 and a disc bulge and probable superimposed central disc herniation at L4-L5.

47.    Plaintiff's treating chiropractor noted a guarded prognosis and stated that Plaintiff has chronic low back pain, which radiates down the legs, neck pain which radiates up to the head resulting in headaches, pain down the arms, depression, weakness in the right leg, left arm, and muscle spasms of the low back, buttocks and shoulder.

48.    According to Plaintiff's treating chiropractor, Plaintiff can sit for only one-hour total in a typical eight-hour workday; can stand/walk for one-hour total in a typical eight-hour workday; and had marked limitations (essentially precluded) of both arms/hands in: grasping, turning, twisting objects; using fingers/hands for fine manipulations; and using arms for reaching.

49.    The above residual functional capacity assessment precludes sedentary work, which is defined by the DICTIONARY OF OCCUPATIONAL TITLES as:

> STRENGTH:  Sedentary Work – Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.  Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

50.    Plaintiff's treating neurologist recommended that Plaintiff continue conservative therapy and obtain a lumbosacral orthosis to try to give her back stability and reduce her back pain. He further stated that if the spinal orthopedists do not feel that there is significant instability and Ms. McGowan's condition fails to improve, then he would be willing to perform an L4-5 microlumbar discectomy.

51.    In a report dated October 12, 2000, Plaintiff's spine and scoliosis specialist diagnosed Plaintiff with degenerative instability at L4-L5 and sacralization of L5-S1. He also opined that Ms. McGowan is a candidate for spinal fusion with interbody fusion and instrumentation at L4-L5.

52.     Plaintiff has received, and continues to receive, appropriate medical treatment for her medical conditions from her various treating physicians.

**PLAINTIFF'S FIRST CAUSE OF ACTION FOR
LONG TERM DISABILITY BENEFITS**

53.     Plaintiff repeats and re-alleges the allegations contained in the Paragraphs number "1" through "52," as if fully set forth herein.

54.     With regard to Plaintiff's claim for benefits under the LTD Plan, she continued to work through July 14, 2000.

55.     On July 14, 2000, Plaintiff was forced to stop working because of degenerative disc disease of the lumbar spine, shooting low back pain that radiates into the lower extremities, mid back pain that radiates across her shoulders, neck pain that radiates into the head and down the arms and hands, paresthesias in the hands and feet, lumbar stenosis, cervical spondylosis, cervical myofascial pain syndrome, and herniated discs of the lumbar and cervical spine.

56.     In compliance with the terms and condition of the Group Policy, Plaintiff timely applied for long-term disability benefits.

57.     In a telephone conversation dated October 18, 2000, between Raymond Cabrara of Prudential and Medco, Mr. Cabrara stated:

> *er phoned in, wanted an update on claim and why it was updated.
> Let her know that we received medical which was reviewed by our
> medical team which supported TD through 10/15/00.  Let her know
> we are still looking into this claim but could not withhold benefits
> until concrete evidence was found.*

Based upon these statements, it appears that Medco and/or the Plan Administrator were operating under a personal bias, seeking to terminate Plaintiff's claim for LTD benefits.

58.     In a subsequent telephone conversation dated October 20, 2000, between Elizabeth Z. Quinones of Prudential and "Paul," an account manager from Medco and/or the Plan Administrator, "Paul" describes a statement made by Ed McTiernam, the HR contact at Medco. The telephone log reads as follows:

Page 9 of 20

*Paul advised that Ed McTiernan hit the roof on this claim since we are currently investigating this situation with siu and extended her benefits.*

*I advised Paul that in this situation as weird as it may seem the medical still continues to support it although we have other suspicions about her working. I advised him that we had this medical reviewed with out [sic] nurse and also discussed with siu and we all agreed that if medical continues to supports a person's disability regardless of what we may think that we cannot hold up her benefits. I also told paul that it may tip ee off to something if we do not continue to pay her. . . .*

59.    By letter dated January 18, 2001, Prudential notified Plaintiff that her LTD claim has been approved effective January 13, 2001, and that she would receive a scheduled benefit of $1,706.24 per month.

60.    By letter dated July 26, 2001, Prudential notified Plaintiff that they were terminating her benefits effective August 1, 2001. Prudential did not provided a time limit within which Plaintiff was required to appeal this the adverse determination.

61.    In its denial letter, Prudential noted that they approved LTD benefits for a closed period of time to allow for surgery and a period of recovery. This is the first mention by Prudential that Plaintiff's claim was approved for a "closed period."

62.    Prudential classified Plaintiff's occupation as sedentary and concluded that given Plaintiff's restrictions, she can perform her regular occupation as a Travel Administrator.

63.    Prudential's classification of Plaintiff's job was based on a vague job description provided by, upon information and belief, Medco and/or the Plan Administrator. The job description simply stated that Plaintiff's job requires continuous sitting. This job description is clearly inadequate and not an accurate summarization of Plaintiff's job duties, yet it was considered by Prudential in making its determination of long term disability benefits..

64.    As noted previously, Plaintiff's occupation as a Travel Administrator should be classified as a "Light" occupation.

65.    Upon information and belief, Prudential and/or the Plan Administrator erroneously classified Plaintiff's occupation as sedentary, making it easier to deny Ms. McGowan's claim.

66.     Upon information and belief, Prudential ignored the salient medical information and concentrated solely on the documentation that supported a decision of no disability.

67.     Although the LTD Plan explicitly gives Prudential the right to have Plaintiff examined by a physician of its choice, the carrier chose not to exercise this right, nor did the Plan administrator.

68.     By letter dated June 2, 2003, Plaintiff informed Prudential that she intended to file an appeal and requested a copy of her entire claim file.

69.     By letter dated July 9, 2003, Prudential sent Plaintiff a small stack of papers that was characterized as her claim file.

70.     By letter dated September 10, 2003, Plaintiff's counsel requested a copy of Ms. McGowan's entire claim file.

71.     By letter dated November 20, 2003, Plaintiff's counsel noted that via telephone conversation, Prudential indicated that the claim file was located in an outside storage facility and that it would take approximately three (3) weeks to obtain.  Plaintiff's counsel informed Prudential that five (5) weeks had gone by and a copy of the claim file had still not been received.  Plaintiff's counsel also noted that the claim file was necessary to perfect Plaintiff's appeal.

72.     After not receiving the claim file, by letter dated January 13, 2004, Plaintiff's counsel notified Prudential that it has been nearly four (4) months and they have not yet received the claim file.

73.     Via telephone conversation on January 30, 2004, Prudential indicated that Plaintiff's claim file has been "misplaced."

74.     By letter dated January 30, 2004, Plaintiff's counsel demanded $110 per day as Prudential exceeded the thirty (30) days within which to provide the claim file, as provided for by ERISA and its regulations.  Plaintiff's counsel again noted that Ms. McGowan's appeal could not be perfected without her claim file.

75.     Finally, by letter dated February 6, 2004, Prudential provided Plaintiff's counsel with what they claimed were copies of all forms received, all medical evidence, all incoming and

out going correspondence, as well as all telephone calls. Prudential noted that if this material is combined with the copies previously supplied to Ms. McGowan, it should have provided a complete copy of the file. This claim file will be referred to as the "first claim file."

76.     The first claim file consisted of a total of 61 pages comprised only of incoming and outgoing correspondence, Prudential's SOAP notes, and a record of telephone calls.

77.     After reviewing the first claim file, it became evident that it was not the complete claim file.

78.     By letter dated May 4, 2004, Plaintiff's counsel formally appealed Prudential's denial of Plaintiff's LTD claim and submitted comments and additional medical documentation for Prudential's review, pursuant to the terms of the LTD Plan.

79.     After Plaintiff submitted the authorizations to release medical information and the comprehensive claimant's statement that was requested by Prudential, the carrier, by letter dated August 9, 2004, notified Plaintiff's counsel that is was evaluating Plaintiff's claim and that if a decision was not rendered within thirty (30) days, Prudential would notify Plaintiff's counsel.

80.     By letter dated August 17, 2004, Prudential forwarded Plaintiff's counsel "a copy of Ms. McGowan's complete claim file to date." This claim file contains a total of 279 pages and will be referred to as the "second claim file."

81.     This provides evidence that a complete claim file was never sent to Plaintiff or Plaintiff's counsel, and significantly prejudiced Plaintiff from having a full, fair and meaningful opportunity to appeal the carrier's adverse determination.

82.     By letter dated September 2, 2004, Plaintiff's counsel informed Prudential that he had received the second claim file, but that Prudential's late production of the claim file did not rectify the shoddy and capricious handling of Ms. McGowan's claim.

83.     In the above letter, Plaintiff's counsel attached the DOT listing for an Administrative Clerk, which more accurately represents Ms. McGowan's job description. The DOT classifies an Administrative Clerk as a Light Occupation.

84.     By letter dated October 6, 2004, Prudential notified Plaintiff's counsel that it was continuing its review and that it would contact Plaintiff's counsel if a decision was not made in thirty (30) days.

85.     By letter dated October 22, 2004, Prudential notified Plaintiff's counsel that it was upholding its decision to terminate Ms. McGowan's LTD benefits effective August 1, 2001.

86.     Prudential's denial was based in part on a <u>file review</u> conducted by a neurosurgeon, Bruce J. Nixon, M.D.  Dr. Nixon concluded that Ms. McGowan could return to her regular job as a travel administrator, which he incorrectly classified as "sedentary."

87.     As a file review doctor, Dr. Nixon never examined Plaintiff, and as such, his report is medically inferior and scientifically unreliable as compared to the opinions of Plaintiff's treating doctors.  Moreover, Dr. Nixon had a pecuniary interest in finding Plaintiff not disabled because as Prudential's medical consultant, he was selected and paid by Prudential.  Further, if Dr. Nixon wished to have repeat business from Prudential, it would be beneficial to find Plaintiff not disabled.

88.     Again, despite its specific authority to have Plaintiff examined, Prudential chose not to do so.

89.     Upon information and belief, Prudential and its file review doctor failed to consider all of the relevant medical documentation in Plaintiff's file and concentrated on the reports and documentation that supported a finding of not disabled.  They also mischaracterized Plaintiff's light occupation as sedentary.

90.     In it's denial letter, Prudential indicated that its vocational specialist allegedly contacted Plaintiff's employer to clarify the duties of her occupation.  This conversation purportedly revealed that an educational background in finance was needed as the occupation involved bookkeeping, numbers ability and billing.  It was noted that Ms. McGowan occasionally traveled overnight to assist in the conversion to an automated system.

91.     Prudential and/or the Plan Administrator failed to provide any information regarding the persons involved in the conversation, the date it took place, the duration of the

conversation, and the substance of the conversation.  Also, a revised job description was not attached to the October 22, 2004, denial.

92.     By letter dated March 7, 2005, Plaintiff's counsel formally appealed Prudential's second denial and submitted further comments and additional medical documentation.

93.     By letter dated March 29, 2005, Prudential notified Plaintiff's counsel that it was continuing its review of Plaintiff's claim and requested proof of Plaintiff's continuing disability. Attached to the letter was an updated copy of Plaintiff's claim file.  This claim file will be referred to as the "third claim file."

94.     By letter dated June 1, 2005, Plaintiff's counsel provided comments to Prudential's March 29, 2005 letter.

95.     By letter dated June 28, 2005, Prudential notified Plaintiff's counsel that it was performing a thorough review of Ms. McGowan's file and noted that it would contact Plaintiff's counsel if a decision was not rendered in thirty (30) days.

96.     By letter dated July 12, 2005, Prudential sent Plaintiff's counsel a copy of the form concerning Plaintiff's job.  This was the same vague form that was submitted in July 2001.

97.     By letter dated July 19, 2005, Prudential provided Plaintiff's counsel with Surveillance Reports dated September 29, 2000, and October 28, 2000.

98.     This provides further evidence that Plaintiff's counsel was never provided with Plaintiff's complete claim file.

99.     By letter dated July 19, 2005, Prudential notified Plaintiff's counsel that it had referred Plaintiff's claim for an external file review and anticipated making a decision by August 25, 2005.

100.    By letter dated August 8, 2005, Plaintiff's counsel responded to Prudential's recent letters and requested a copy of the *curriculum vitae* ("CV") of all of the medical professionals utilized in this matter, including the newest external reviewer.

101.    By letter dated August 25, 2005, Prudential notified Plaintiff's counsel that it does not maintain the CVs as part of the claim file, however, Plaintiff's counsel can receive the name and title of any individual who has reviewed Ms. McGowan's file.

102.    Via a second letter dated August 25, 2005, Prudential issued it's final decision and again chose to uphold its decision to terminate Plaintiff's LTD claim effective August 1, 2001.

103.    This final denial was based mainly on an external file review conducted by a Physiatrist, who never examined Plaintiff. The Physiatrist concluded that Plaintiff's medical condition does not impair her from performing her regular occupation.

104.    Neither Plaintiff nor her counsel were provided with the identity of this Physiatrist. This is a clear violation of ERISA and its regulations.

105.    For a third time, despite its specific authority to have Plaintiff examined by an Independent Medical Examiner, Prudential chose not to do so.

106.    Again, as a file review doctor, the Physiatrist never examined Plaintiff, and as such, his/her report is medically inferior and scientifically unreliable as compared to the opinions of Plaintiff's treating doctors.

107.    Plaintiff applied for and was awarded Social Security Disability Benefits. Ms. McGowan received a Notice of Award with benefits to begin retroactively as of July 17, 2001.

108.    The definition of disability under the Social Security Act is more restrictive than the definition of disability found in the LTD Plan. According to 20 C.F.R. §404.1505:

> a) The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. To meet this definition, you must have a severe impairment, which makes you unable to do your previous work or any other substantial gainful activity which exists in the national economy. To determine whether you are able to do any other work, we consider your residual functional capacity and your age, education, and work experience.

109.    In its third and final denial of Plaintiff's LTD claim, Prudential failed to reconcile the conclusion of the Social Security Administration, that Ms. McGowan was totally disabled, with Prudential's conclusion that she was not totally disabled – under a far less stringent definition of disability.

110.    In addition, Prudential receives a financial benefit from the Social Security Disability award. Prudential is allowed to reduce any disability benefits payable under the LTD

Plan by the amount of "Deductible Income Benefits" received.  Among the "Deductible Income Benefits" are benefits under the Social Security Act.

111.    In seeking to further its own pecuniary interest, Prudential has denied Plaintiff of her right to a full and fair review of the denial of her claim, as required by ERISA.

112.    Prudential, as the claims administrator for the LTD Plan, is a fiduciary, as defined by ERISA, and owes a fiduciary duty to Plan participants such as Ms. McGowan.  Prudential's rights and obligations, if any, are derivative of the Plan Administrator's rights and obligations.

113.    Prudential, as the insurer of the LTD Plan, pays LTD benefits out of its own coffers.  As such, Prudential is operating under a significant conflict of interest which had a material effect on its decisions on this claim.

114.    The LTD Plan, as an employee welfare benefit plan under ERISA, also owes a fiduciary duty to Ms. McGowan and other Plan participants, through the actions of its claims and plan administrators.

115.    The LTD Plan's fiduciary duty requires that it select an insurer/claims administrator who will: administer claims in accordance with plan terms; fairly and objectively apply plan terms and evaluate medical evidence; and comply with ERISA and its regulations.

116.    By allowing Prudential to severely mishandle Plaintiff's claim as it did, the LTD Plan, through its Plan Administrator, failed in its fiduciary duty to Ms. McGowan.

117.    As such, the LTD Plan and the Plan Administrator failed to adequately monitor, control and correct Prudential's improper actions.

118.    Fiduciaries have a statutory obligation, in performing their duties, to act prudently and solely in the interest of Plan participants and beneficiaries, and strictly in conformance with the provisions of the Plan.

119.    The adverse claim decisions rendered in the instant action have been made by Prudential, which has a pecuniary interest in denying claims.

120.    Fiduciaries also have a statutory obligation to fairly interpret and construe the terms of the Plan and thereby make decisions in accordance with plan language.

121.   Prudential's decisions were not supported by the medical evidence and were not supported by the applicable Plan language.

122.   Prudential's decisions in the instant claim were not supported by the evidence submitted with Plaintiff's claim.

123.   Plaintiff was and remains disabled within the terms and conditions of the LTD Plan.  Plaintiff is, therefore, entitled to the receipt of Long-Term Disability benefits retroactive to August 1, 2001, and continuing to the present under the LTD Plan.


## PLAINTIFF'S SECOND CAUSE OF ACTION FOR PENALTIES UNDER ERISA § 502(C)(1)

124.   Plaintiff repeats and re-alleges the allegations contained in the Paragraphs number "1" through "123," as if fully set forth herein.

125.   On or about September 10, 2003, Plaintiff's counsel requested a copy of Plaintiff's entire claim file, all documents produced in connection with any evaluations of Ms. McGowan's condition and all documents provided to Prudential by Plaintiff's employer, pursuant to 29 C.F.R. § 2560.503-1.

126.   The request was sent to Giovanny F. Tutiven, Disability Claim Manager by certified mail, return receipt requested, and was received by Prudential on September 12, 2003.

127.   Pursuant to ERISA § 502, Defendant, Prudential was required to respond to Plaintiff's request within 30 days, on or about October 12, 2003.

128.   Despite Plaintiff's counsel's numerous request, Prudential has still not provided  a full and complete copy of  the entire claim file.  In particular and without limitation, Prudential has failed to provide the *curriculum vitae* of the medical professionals that reviewed Ms. McGowan's medical records and determined that she was not disabled, as requested in the September 10, 2003 letter.

129.   Further, Prudential "misplaced" Ms. McGowan's claim file.  By letter dated February 6, 2004, Prudential stated "Since it appears that we will be unable to locate the original

paper claim file, we have made copies of the claim file as it appears in our on-line claims system." Further, in the same letter, Prudential provided Plaintiff's counsel with what they claimed were copies of all forms received, all medical evidence, all incoming and out going correspondence, as well as all telephone calls. Prudential noted that if this material is combined with the copies previously supplied to Ms. McGowan, it should have provided a complete copy of the file.

130. Notably, the above noted claim file did not contain any of Plaintiff's medical records.

131. Subsequently, by letter dated August 17, 2004, Prudential sent a copy of what was labeled as Ms. McGowan's "complete claim file." This claim file contained more than three (3) times the amount of documents that were previously forwarded to Plaintiff's counsel.

132. This leads Plaintiff to question whether there are other documents that either have not been produced or have not been located since Prudential lost Ms. McGowan's claim file.

133. Defendant Prudential's failure to provide Plaintiff with a complete copy of the entire claim file has prejudiced Plaintiff by interfering with her ability to pursue her rights under her employer's employee benefit welfare plan.

134. Since Prudential failed to provide the requested documents within thirty days, Plaintiff is entitled to statutory penalties in the amount of $110.00 per day, commencing on October 12, 2003, and continuing until the date that Prudential finally provides Plaintiff with the requested documents.

### PLAINTIFF'S THIRD CAUSE OF ACTION FOR MEDICAL BENEFITS

135. Plaintiff repeats and re-alleges the allegations contained in the Paragraphs number "1" through "134," as if fully set forth herein.

136. Upon information and belief, the Health Care Plan provided that, if Plaintiff is disabled and receiving benefits under the LTD Plan, then she is entitled to continued coverage under the Health Care Plan.

137.    The LTD Plan's wrongful termination of her benefits has deprived Ms. McGowan of her medical insurance coverage under the Health Care Plan, and has caused her to incur medical expenses that would have otherwise been covered under the Health Care Plan.

138.    As a result of Plaintiff's disability and entitlement to benefits under the LTD Plan, as detailed *supra*, she is entitled to reinstatement of her coverage under the Health Care Plan and reimbursement for those medical expenses, including COBRA premiums, she incurred during the wrongful suspension of her medical insurance.

## PLAINTIFF'S FOURTH CAUSE OF ACTION FOR DENTAL BENEFITS

139.    Plaintiff repeats and re-alleges the allegations contained in the Paragraphs number "1" through "138," as if fully set forth herein.

140.    Upon information and belief, the Health Care Plan provided that, if Plaintiff is disabled and receiving benefits under the LTD Plan, then she is entitled to continued coverage under the Health Care Plan.

141.    The LTD Plan's wrongful termination of her benefits has deprived Ms. McGowan of her dental insurance coverage under the Health Care Plan, and has caused her to incur dental expenses that would have otherwise been covered under the Health Care Plan.

142.    As a result of Plaintiff's disability and entitlement to benefits under the LTD Plan, as detailed *supra*, she is entitled to reinstatement of her coverage under the Health Care Plan and reimbursement for those dental expenses, she incurred during the wrongful suspension of her dental insurance.

WHEREFORE, Plaintiff respectfully requests the following relief:

a.    That the Court declare and then determine that, under the terms of the LTD Plan,

Plaintiff's disability began on July 14, 2000, and that she continues, without interruptions, to be disabled within the terms of the LTD Plan;

  b.  That, after making such a determination, the Court grant Plaintiff appropriate legal relief and order Defendants, the LTD Plan and Prudential, to compensate Plaintiff for her disability in accordance with the terms of the LTD Plan, retroactive to August 1, 2001;

  c.  That the Court award Plaintiff penalties in the amount of $110.00 per day for the period beginning October 12, 2003, and continuing until the date Prudential actually provides the documentation as required by statute;

  d.  That the Court award Plaintiff her attorney's fees pursuant to ERISA, 29 U.S.C. §1132(g); and

  e.  That Plaintiff receive such other necessary, proper and equitable relief, including interest, costs and disbursements, as to which she may be entitled.


Dated: November **21**, 2006
   Hauppauge, New York

           DEHAAN, BUSSE, BINDER & BINDER, LLP

     By:

           Patrick H. Busse (PB1708)
           Attorneys for Plaintiff
           300 Rabro Drive
           Suite 101
           Hauppauge, New York  11788
           Telephone: (631) 582-1200
           Facsimile: (631) 582-1228